Rohit Nath (SBN# 316062)
Michael Adamson (SBN# 321754)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: rnath@susmangodfrey.com
madamson@susmangodfrey.com

Justin A. Nelson (*to seek pro hac vice*)
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: jnelson@susmangodfrey.com

Nancy E. Wolff SBN# 133334
**Cowan, DeBaets, Abrahams & Sheppard, LLP**
60 Broad Street, 30th Floor
New York, NY 10004
Telephone: (212) 974-7474
Email: nwolff@cdas.com

*Attorneys for Plaintiff EVOX Productions LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| EVOX PRODUCTIONS LLC | Case No. 2:26-cv-8408 |
|---|---|
| Plaintiff, | **COMPLAINT FOR DIRECT COPYRIGHT INFRINGEMENT; CONTRIBUTORY COPYRIGHT INFRINGEMENT; VIOLATIONS OF 17 U.S.C. § 1202(b)** |
| vs. | |
| MIDJOURNEY, INC. | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

**INTRODUCTION**

1.     EVOX Productions LLC ("EVOX") is the market-leading creator and licensor of high-quality automotive photographic images, having photographed nearly every commercially available automobile make and model sold in the United States since the year 2000. For decades, leading auto manufacturers, tens of thousands of car dealer websites, automobile shopping and research websites, newspapers, and many others have licensed EVOX's images for various commercial purposes.

2.     EVOX's images are highly sought after in the marketplace because of their distinctive aesthetic and are widely recognized as the best in the field. EVOX has invested and continues to invest substantial resources to create its unique imagery, including by hiring and training highly skilled professional photographers who create EVOX's images in a specialized studio. EVOX uses state-of-the-art cameras to create both still and 360-degree images, and adds post-production enhancements using computer-generated imagery ("CGI"). In producing each unique image, EVOX photographers make numerous creative choices to enhance the image's appearance and maintain EVOX's distinct aesthetic. EVOX additionally produces metadata for each image, which includes an accurate textual description of the image.

3.     Photographing automobiles poses unique challenges that EVOX has solved through its creative decisions and unique process that result in a distinct selection and arrangement of protected expressive choices. For example, due to their highly polished surface, cars reflect their surroundings, potentially introducing undesirable non-uniformity and reflections to the images. EVOX has solved that issue by using a specially designed photography studio and advanced editing techniques.

4.     To protect its valuable images, EVOX routinely registers them with the U.S. Copyright Office. EVOX has valid copyright registrations for more than one million images.

5.     EVOX has spent decades diligently growing a licensing business for its copyrighted images, and has counted a large number of dealer websites, auto manufacturers, and newspapers among its many licensees.

COMPLAINT

6.    Recently, the introduction of generative AI products that enable users to create visual images using text prompts has raised a new and existential challenge to EVOX's business.

7.    Defendant Midjourney, Inc. ("Midjourney") markets and licenses a generative AI product (the "Midjourney AI Image Generation Product") that, among other functions, permits users to generate images using text prompts.

8.    To build the Midjourney AI Image Generation Product, Midjourney "trained" the underlying model with billions of reproduced images paired with text descriptions. Those images included, at the very least, tens of thousands of EVOX's copyright-registered images. Midjourney downloaded and reproduced EVOX's images using publicly available, online image datasets, without ever asking EVOX's permission or licensing the images from EVOX. Those websites warn that their images are not to be used for "real-world production or application" or for "creating ready-to-go industrial products." Yet Midjourney did so anyway.

9.    To train its product effectively, Midjourney routinely and deliberately stripped downloaded and reproduced images of any copyright management information ("CMI"). The EVOX Images that Midjourney downloaded uniformly included CMI, including watermarks, on-image credit lines, and metadata containing identifying information and other text. Midjourney deliberately cropped or otherwise stripped that CMI as part of its pre-processing of EVOX's images. Midjourney did so to prevent its models from reproducing the CMI in its image outputs, which would both detract from the outputs and make obvious the source of the images and the company's underlying infringement.

10.    After removing EVOX's CMI, Midjourney then implemented a model training process that involved making numerous iterative copies of the images and creating derivative works based on those images.

11.    The culmination of those unlawful infringements was the Midjourney AI Image Generation Product, custom-built to reproduce and mimic the images on which it was trained, including EVOX's.

12.    Midjourney licenses the Midjourney AI Image Generation Product—which is one

2

COMPLAINT

of the top products of its kind—to millions of paying subscribers. The company earns hundreds of millions in annual revenues and is growing rapidly.

13. This horde of subscribers would naturally rather pay a nominal monthly fee to generate automotive images that copy EVOX's aesthetic than pay a much larger sum to legitimately license those images from EVOX.

14. The company and product that Midjourney built in part on EVOX's stolen images is now stifling EVOX's incentive to produce such images. And Midjourney is doing all this while never even asking for EVOX's permission to license its copyrighted images or pay any compensation.

15. This is exactly the type of commercially exploitative conduct that requires a license or other compensation to the copyright holder. Copyright law seeks to incentivize companies such as EVOX to invest in and create new works. That incentive exists only when EVOX can monetize its creative output for the duration of its copyright. Midjourney is destroying that incentive by copying and exploiting EVOX's images without consent or license, to help create a product that competes with EVOX in the market. The purpose of this suit is to put an end to Midjourney's unlawful conduct and to force the company to appropriately compensate EVOX.

## PARTIES

16. EVOX is a limited liability company organized under the laws of Delaware and headquartered in California.

17. Midjourney is a corporation organized under the laws of Delaware and headquartered in California.

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1331 because it "aris[es] under the Constitution, laws, or treaties of the United States."

19. This Court has personal jurisdiction over Midjourney because the company is at home in California, where it maintains its headquarters and principal place of business. This suit also arises out of and relates to Midjourney's conduct within California.

COMPLAINT

20.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

21.    Venue is also proper in this Court under 28 U.S.C. § 1400(a) because Midjourney would be amenable to personal jurisdiction if this District were a separate state.

22.    Specifically, as explained below, Midjourney willfully infringed the copyrights in EVOX's images. EVOX is headquartered in Los Angeles County in the Central District of California. And EVOX's copyrighted images, which Midjourney infringed, were created in Los Angeles County, and the resulting effects and economic harm are flowing to EVOX in its home district. EVOX's claims therefore arise out of Midjourney's conduct directed at the Central District of California. This Court's exercise of jurisdiction is reasonable, especially since Midjourney is already litigating a copyright-infringement case in this District, *Disney Enterprises, Inc. et al. v. Midjourney, Inc.*, No. 2:25-cv-05275-JAK-AJR (C.D. Cal.).

## FACTUAL ALLEGATIONS

**A.    EVOX's Automotive Image Licensing Business**

23.    EVOX is a creator and provider of automotive images for commercial use, including high-quality professional photographs, 360-degree panoramas and spins, and videos. The company offers an automotive library consisting of nearly every commercially available automobile make and model sold in the United States since the year 2000. EVOX also offers its content through customizable apps and an API that enables users to integrate its images and related resources into marketing materials, advertising campaigns, showroom presentations, and product clinics.

24.    EVOX registers its images with the U.S. Copyright Office and has copyright certificates for all of its registered images (the "Copyrighted Images"). The copyright registration numbers for each of the Copyrighted Images are included in **Exhibit A**. EVOX is informed and believes that these images were infringed and are at issue in this dispute.

25.    EVOX has invested considerable resources to overcome the unique challenges of automobile photography. For example, because a vehicle's exterior is highly reflective, automobile images can easily capture unwanted reflections or lighting from the surrounding environment. The

company therefore employs highly trained professional photographers to create its images in a photography studio designed specifically for photographing vehicles. That studio helps facilitate the production of images without unwanted reflections, and it allows the photographers to create the distinctive lighting and shading for which EVOX's images are known. EVOX additionally uses the latest digital equipment and further enhances its images in post-production using CGI. Throughout this meticulous process, EVOX's professionals make numerous creative decisions, including but not limited to:

- the positioning and framing of the vehicle;

- the degree to which the wheels should be turned;

- the selection of cameras, lenses, and focus;

- the distance of the vehicle from the camera;

- the use, color, and position of overhead lighting to create soft-edged shadows underneath the vehicle;

- the placement of the vehicle against a white background;

- the prevention of noticeable reflections in the window to allow the interior to stand out;

- the reflection of a gray half wall in the doors to create contrast;

- the selection of props to be shown on the trunk or interior; and

- post-production enhancements added with creative design software and CGI.

26.    The culminative result of the combination, selection, and arrangement of these deliberate creative decisions is a distinctive, high-end aesthetic that has made EVOX the market-leading licensor of automotive images. The following image exemplifies that signature aesthetic:



5

27.     The combination, selection, and arrangement of these expressive choices in each copyrighted photograph defines the signature EVOX creative aesthetic. That aesthetic is a major reason why EVOX has successfully licensed its images for use by companies such as Kelly Blue Book, TrueCar, and CapitalOne.

28.     In recognition of the unique value of its image library and the extensive resources required to produce it, EVOX requires its licensees to implement appropriate technologies and security procedures to prevent the unauthorized use of its images by third parties.

29.     The website of EVOX licensee Kelley Blue Book, for example, states that "[a]ll images on this site are legally protected . . . and are not to be used, reproduced, modified or distributed without written consent of Kelley Blue Book and/or Evox Productions LLC."[1] EVOX also requires licensees to implement special protocols that prevent bots or search engine crawlers from indexing its copyrighted images.

**B.     The Massive Commercial Success of the Midjourney AI Image Generation Product**

30.     David Holz founded Midjourney, Inc. in August 2021. The company first launched a private demo of the Midjourney AI Image Generation Product in September 2021. A few months later, in February 2022, Midjourney released a public version via Discord, which is a voice, video, and text communication platform.

31.     Midjourney licenses the Midjourney AI Image Generation Product on a subscription basis. Monthly subscriptions range from $8 to $120 per month, with higher costs associated with a greater number of "fast GPU hours."

32.     Public reports indicate that Midjourney generated approximately $500 million in subscription revenues in 2025, up from $300 million in 2024.

33.     The Midjourney AI Image Generation Product reportedly accounts for more than one-quarter of the global AI image generator market share. That makes it one of the leading products—if not *the* leading product—in the rapidly growing AI image generation industry.

34.     The Midjourney AI Image Generation Product—like many products of its kind—

---

[1] https://www.kbb.com/company/copyrights-and-trademarks/

does not produce images from a creative or artistic vacuum. Instead, it required the input of billions of unique images to build its image-production capabilities. To accumulate this data, Midjourney relied on, among other things, publicly available datasets compiled by third parties.

**C.     LAION Datasets Include More than 100,000 of EVOX's Copyright-Registered Images**

35.     LAION—which is an abbreviation for Large-scale Artificial Intelligence Open Network—touts itself as "a non-profit organization" that provides free access to "datasets, tools and models to liberate machine learning research."

36.     LAION released the LAION-400M dataset in August 2021. That dataset includes approximately 413 million unique English image-text pairs extracted from Common Crawl. Common Crawl obtained those pairs by crawling numerous web pages, including webpages containing EVOX's images, between 2014 and 2021. LAION downloaded those image-text pairs and filtered them to deduplicate and remove samples with fewer than 5 characters or less than 5 KB image size. LAION also used OpenAI's Contrastive Language-Image Pre-training (CLIP) model to filter (i) image-text pairs for which the image and text did not match well and (ii) some illegal content.

37.     LAION then developed an "img2dataset library," which allows users "to comfortably download from a given set of URLs, resize and store the images and captions in the webdataset format." With the library, users can "download 100 million images from [LAION's] list of URLs in 20 hours with a single node . . . ."[2]

38.     Although LAION allows anyone to download from the links in its LAION-400M dataset, the website on which it is hosted warns that "this large-scale dataset is non-curated" and "is not meant for any real-world production or application."[3]

39.     Less than one year later, in March 2022, LAION next released the LAION-5B dataset. As with LAION-400M, LAION collected the raw data for LAION-5B primarily from

---

[2] Christoph Schuhmann et al., LAION, *LAION-400M: Open Dataset of CLIP-Filtered 400 Million Image-Text Pairs* (Nov. 3, 2021), https://arxiv.org/pdf/2111.02114.

[3] Christoph Schuhmann, LAION, *LAION-400-Million Open Dataset* (Aug. 20, 2021), https://laion.ai/blog/laion-400-open-dataset/.

Common Crawl. The Common Crawl data included approximately 50 billion images crawled from billions of webpages, including webpages containing EVOX's images, dating back to 2008.

40. LAION then used a similar methodology as with the LAION-400M dataset to filter those 50 billion images down to a set of 5.85 billion multi-lingual CLIP-filtered image-text pairs. Of those, 2.32 billion image-text pairs contain English language text.

41. "In order to rapidly and efficiently download images from URLs," LAION again provided an "img2dataset" library. "Depending on bandwidth, it's feasible to download the entire LAION-5B dataset in 7 days using 10 nodes."[4]

42. The website hosting LAION-5B warns that the dataset is "uncurated" and should not be used "for creating ready-to-go industrial products, as the basic research about the general properties and safety . . . is still in progress."[5]

43. The LAION-5B dataset includes a subset of English-language data called "LAION2B-en." The LAION2B-en dataset includes approximately 2.3 billion English language image-text pairs.

44. More than 100,000 of EVOX's Copyrighted Images are maintained on the LAION datasets. **Exhibit B** includes the copyright registration number for each of those images, along with the location of each image in the LAION datasets.

45. On information and belief, EVOX's Copyrighted Images are maintained on other datasets that Midjourney copied and used, and Midjourney also copied the Copyrighted Images directly through its own scraping. **Exhibit A** includes the copyright registration number for each of EVOX's Copyrighted Images. The volume of Midjourney's copying—including of EVOX's images—was massive.

[4] Christoph Schuhmann, LAION, *LAION-5B: An open large-scale dataset for training next generation image-text models* (Oct. 16, 2022), https://arxiv.org/pdf/2210.08402.

[5] Romain Beaumont, LAION, *LAION-5B: A New Era of Open Large-Scale Multi-Modal Datasets* (Mar. 31, 2022), https://laion.ai/blog/laion-5b/.

COMPLAINT

**D.    The Midjourney AI Image Generation Product Uses a Diffusion Model, Based on Copies of Billions of Images**

46.    The Midjourney AI Image Generation Product uses a large language model (LLM) combined with a diffusion model to generate images. At a high level, the LLM interprets text prompts by breaking them into key concepts and then converting them into a numeric code that represents image details, like color, shape, and style. The diffusion model then generates the final image.

47.    Developing a diffusion model used to generate images involves (i) destroying the copied images by systematically adding noise ("forward diffusion") and then (ii) reversing that destruction ("reverse diffusion").

48.    The forward diffusion phase involves an iterative, fixed, purely mathematical procedure for corrupting data.

49.    The reverse diffusion process is where the model is programmed to generate images based on text prompts. That process involves developing a neural network to predict how to remove the noise that was added at each timestep of the forward-diffusion process.

50.    Successfully developing a competitive, general-purpose text-to-image diffusion model requires forward and reverse diffusion of hundreds of millions to billions of copied images. According to Midjourney, Inc., its "models are trained on datasets comprised of billions of images, text, and audiovisual content."[6]

51.    Once a model has been developed to reverse diffusion based on copied images, it can generate new images by starting from pure random noise, iteratively "denoising" into a coherent image.

**E.    Midjourney Used LAION, DataComp, and Direct Internet Scraping, Which Included EVOX's Copyright-Registered Images, to Develop the Midjourney AI Image Generation Product**

52.    Midjourney has admitted that the billions of images it used to develop the

---

[6] Midjourney, AB2013 Documentation (Jan. 20, 2026), https://docs.midjourney.com/hc/en-us/articles/42829949256205-AB2013-Documentation.

9

COMPLAINT

Midjourney AI Image Generation Product included images downloaded from LAION and other datasets.

53.     In September 2022, Midjourney's founder and CEO, David Holz, commented on the image data his company used to create its Midjourney AI Image Generation Product: "It's just a big scrape of the Internet. We use the open data sets that are published and train across those. And I'd say that's something that 100% of people do. We weren't picky." Mr. Holz further admitted that Midjourney did not "seek consent from living artists or work still under copyright," claiming that "[t]here isn't really a way to get a hundred million images and know where they're coming from."[7]

54.     Midjourney has since clarified that it "trained version 1 of its generative AI model in the months preceding February 2022, and that this training data included data available at some URLs included in the LAION 400M dataset."[8] Further, Midjourney admitted that "the LAION-400M dataset contains URLs and that Midjourney downloaded and used data available at some of those URLs to train one or more versions of its generative AI models."[9]

55.     Midjourney also admitted "that the LAION-5B dataset contains URLs and that Midjourney downloaded and used data available at some of those URLs to train one or more versions of its generative AI models."[10] And Midjourney "filtered data from the LAION-400M and LAION-5B datasets to prepare a dataset of desirable images for use in training."[11]

56.     Midjourney has additionally admitted to using other datasets to train one or more of its AI models. For example, Midjourney has admitted to using "data available at some of the URLs

---

[7] Rab Salkowitz, Forbes, *Midjourney Founder David Holz on the Impact of AI on Art, Imagination and the Creative Economy* (Sept. 16, 2022), https://www.forbes.com/sites/robsalkowitz/2022/09/16/midjourney-founder-david-holz-on-the-impact-of-ai-on-art-imagination-and-the-creative-economy/.

[8] *Andersen, et al. v. Stability AI Ltd., et al.*, No. 3:23-cv-00201-WHO, Dkt. 448 ¶ 257 (N.D. Cal. Mar. 13, 2026).

[9] *Id.* ¶ 273.

[10] *Id.* ¶ 278.

[11] *Andersen*, No. 3:23-cv-00201-WHO, Dkt. 371 (N.D. Cal. Dec. 17, 2025).

10

COMPLAINT

in a DataComp dataset to train one or more versions of its generative AI models."[12] The DataComp xlarge dataset includes "12.8 billion image-text pairs from Common Crawl."[13] On information and belief, that massive dataset includes tens or hundreds of thousands of EVOX's Copyrighted Images. EVOX also is informed and believes that Midjourney supplemented the use of these datasets with its own direct crawl of the internet, capturing even more of EVOX's Copyrighted Images.

57.   Independent researchers have separately confirmed Midjourney's apparent use of LAION datasets for developing its generative AI models. They have done so by using the original captions associated with images within the LAION-5B dataset as image-generation prompts for the Midjourney AI Image Generation Product. Using those prompts generated images that "appear to have been memorized" from LAION-5B.[14]

58.   EVOX conducted its own investigation, with similar results. The following examples compare the original EVOX images on the left with images generated by the Midjourney AI Image Generation Product on the right:





[12] *Andersen*, No. 3:23-cv-00201-WHO, Dkt. 44 ¶¶ 27, 293 (N.D. Cal. Mar. 13, 2026).

[13] DataComp-CLIP, https://www.datacomp.ai/dcclip/.

[14] Matyas Bohacek & Hany Farid, arXIv, *Has an AI model been trained on your images?* (Jan. 11, 2025), https://arxiv.org/html/2501.06399v1#S2.F1.



59.     As the screenshots above show, the Midjourney AI Image Generation Product generates images that are substantially similar to the protectable expressive elements of EVOX's Copyrighted Images, including:

- the positioning of the vehicle;

- the camera angle;

- the degree to which the wheels are turned;

- the image focus;

- the apparent distance of the vehicle from the camera;

- the shadow under the car;

- the reflection of a gray half wall in the doors to create contrast; and

- placement of the vehicle against a white background.

60.     These similarities are no coincidence. An almost infinite number of possible rotational angles, camera heights, camera distances and lighting configurations exist. Yet, the Midjourney AI Image Generation Product consistently replicates EVOX's specific mix of creative choices, rejecting those that differ significantly from EVOX's distinctive style.

61.     Taken as a whole, those creative choices and techniques define EVOX's protectable expression in the Copyrighted Images. EVOX does not claim ownership over any single unprotectable element in isolation—such as a white cyclorama background or a three-quarter front angle. Instead, EVOX's copyrights protect the original combination, selection, coordination, and arrangement of these creative choices that, in their aggregate, constitute protectable expression.

62.     The side-by-side images above thus reveal two forms of copyright infringement:

(1) unlawful copying of EVOX's images to develop the Midjourney AI Image Generation Product and (2) the Product's routine output of unlawful copies.

63. Consistent with Mr. Holz's statements quoted above, Midjourney never asked EVOX for its permission to copy or use EVOX's Copyrighted Images to develop the Midjourney AI Image Generation Product. Nor has Midjourney ever paid or offered to pay EVOX for a license to reproduce EVOX's Copyrighted Images, an exclusive right belonging to EVOX under Section 106(1) of the Copyright Act.

64. It is not simply a foregone conclusion that companies like Midjourney must engage in unauthorized copying to build their AI generation products. Nor is it a foregone conclusion that Midjourney must permit its product to reproduce copyrighted images en masse. Companies can and have placed limitations on their AI products to prevent the reproduction of copyrighted material. For example, Google has restricted its Gemini AI image tool from generating images of Disney characters.[15] Midjourney's unauthorized copying of EVOX images to train the Midjourney AI Image Generation Product—and its decision to allow that product to continuously reproduce those images—are deliberate choices, not an inevitability.

**F.    Midjourney Deliberately Removed and Altered CMI from EVOX's Copyrighted Images**

65. According to LAION, "[w]atermarked images are a big problem when training generative models . . . ." This is because models trained on watermarked images will copy watermarks as core image features and associate specific concepts with copyright stamps. In addition, commercial models that output watermarks or copyright stamps would effectively broadcast the underlying copyright infringement, exposing the model owners to liability.

66. To help model developers deal with these problems, LAION used a watermark detector to assign a "pwatermark" score to images in its datasets.[16]

---

[15] See Eric Hal Schwartz, TechRadar, *Disney just shut down AI image prompts for its characters — and it might mark the end of the Wild West era of AI image creation* (Feb. 11, 2026), https://www.techradar.com/ai-platforms-assistants/disney-just-shut-down-ai-image-prompts-for-its-characters-and-it-might-mark-the-end-of-the-wild-west-era-of-ai-image-creation

[16] Romain Beaumont, LAION, *LAION-5B: A New Era of Open Large-Scale Multi-Modal Datasets*

67. Those scores allowed Midjourney to target watermarked images for additional pre-processing, including watermark removal, cropping, and other techniques. For example, Midjourney was able to easily target for additional pre-processing images with a pwatermark score above a certain threshold.

68. EVOX's images available in the LAION datasets include visual watermarks, on-image credit lines, and embedded metadata. Sometimes those marks are subtle and easily cropped, as shown in the bottom-right corner of the following image:



Sometimes the marks are more prominent, as shown here:



69. Midjourney pre-processed EVOX's images before using them for its models to intentionally remove EVOX's watermarks and on-image credit lines from those images. The company did so, without EVOX's authorization, to induce, enable, facilitate, and conceal further

(Mar. 31, 2022), https://laion.ai/blog/laion-5b/.

14

COMPLAINT

copyright infringement. Specifically, EVOX is informed and believes that Midjourney knowingly removed watermarks and on-image credit lines at some point during the training process to conceal the copyrighted nature of EVOX's images. Midjourney knew that if it had not done so, then the automotive images output by the Midjourney AI Image Generation Product would include unwanted watermarks, credit lines, or watermark-like blemishes. Those watermarks and credit lines, in turn, would make it obvious that Midjourney had unlawfully used EVOX's Copyrighted Images to develop the Midjourney AI Image Generation Product. Even if watermark-like blemishes were sometimes distorted enough to obscure that the source material was EVOX's, those blemishes would still reveal the copyright-protected nature of the source material. Midjourney thus unlawfully stripped the Copyrighted Images of their CMI to conceal, enable, and facilitate the company's infringing conduct.

70.     Midjourney also did so to induce further infringement in the form of infringing derivatives. The company knew that users of the Midjourney AI Image Generation Product seeking to replicate the Copyrighted Images would not want those images to bear EVOX's CMI (or distorted versions thereof). By stripping EVOX's Copyrighted Images of their CMI, Midjourney empowered its users to generate automotive images without any incriminating EVOX attribution or other indication of copyright protection.

71.     As a result of Midjourney's unlawful conduct, the Midjourney AI Image Generation Product produces images featuring EVOX's protectible creative elements, but without any EVOX watermark or other attribution. This is apparent from the following exemplary outputs from the Midjourney AI Image Generation Product:

 

**G.      The Midjourney AI Image Generation Product Is Destroying the Market for EVOX's Images and Diminishing the Incentive for EVOX to Continue Creating Them**

72.      The Midjourney AI Image Generation Product is destroying the market for EVOX's images. Someone who can generate a virtually unlimited number of high-quality, royalty-free car images that substantially copy EVOX's unique images is unlikely to license such images from EVOX.

73.      To put this in context, a dealer or car insurance provider seeking images for its website currently faces a choice, as demonstrated by the images below. The company can either (a) license the image on the left from EVOX, such as by purchasing an "Enterprise Wide" license costing potentially $1,300 or more; or (b) generate a virtually unlimited supply of images like the one on the right for the nominal cost of a monthly subscription to the Midjourney AI Image Generation Product:

 

74.      EVOX cannot compete effectively against Midjourney's multi-tiered infringement. It cannot compete when Midjourney pirates infringing copies of EVOX's Copyrighted Images, strips them of CMI, and then uses them to train an AI Image Generation Product that floods the market with even more infringing copies and substantially similar knockoff images.

75.      The Midjourney AI Image Generation Product is therefore greatly diminishing the incentive for EVOX to continue creating its photographer-created, unique automotive images.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**

**Direct Copyright Infringement – Unauthorized AI Training; Violation of the Exclusive Rights Protected by 17 U.S.C. §§ 106(1)–(3) and (5), 501 *et seq*.**

76.    EVOX repeats and realleges all prior allegations as if fully set forth herein.

77.    Each of the Copyrighted Images is an original pictorial work and constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

78.    EVOX owns a valid, registered copyright for each of the 103,957 Copyrighted Images found in the LAION 400M and LAION-5B datasets. **Exhibit B** includes the copyright registration number for each of those images, along with the location of each image in the LAION datasets.

79.    Defendant was not, and is not, authorized to reproduce, distribute, display, or otherwise use the Copyrighted Images.

80.    Midjourney unlawfully copied EVOX's Copyrighted Images by downloading them in their entirety from LAION's list of URLs using img2dataset and other means. On information and belief, Midjourney also unlawfully copied EVOX's Copyrighted Images by downloading them from DataComp's list of URLs and directly crawling and scraping the internet. Midjourney stored those copies as compressed, digitized representations in computer memory. In that form, the copies could be perceived, reproduced, and communicated. Such downloading of unauthorized copies of EVOX's Copyrighted Images—when those Copyrighted Images were readily available for licensing—inherently and irredeemably infringed on EVOX's exclusive rights of reproduction, production of derivative works, distribution, and display under Section 106(1)–(3) and (5) of the Copyright Act.

81.    Each original copy of EVOX's Copyrighted Images that Midjourney unlawfully downloaded was then illegally reproduced numerous times. Midjourney made such reproductions, for example, as part of its pre-processing of EVOX's Copyrighted Images, including to remove EVOX's watermarks, on-image credit lines, and other CMI.

17

COMPLAINT

82. Midjourney then made further, iterative reproductions as part of the forward-diffusion phase of developing the Midjourney AI Image Generation Product. That phase involved systematically adding noise to EVOX's Copyrighted Images. Those noise-infused reproductions included both copies and derivative works, as those terms are defined by 17 U.S.C. § 101. Even after adding noise to EVOX's Copyrighted Images, Midjourney's reproductions of those images existed in a concrete, digital form and substantially incorporated protected expression from EVOX's copyrighted images.

83. Midjourney then made even more iterative reproductions of EVOX's Copyrighted Images during the reverse-diffusion phase of developing the Midjourney AI Image Generation Product. As with the reproductions Midjourney made during the forward-diffusion phase, the reproductions Midjourney made during the reverse-diffusion phase of model development included both copies and derivative works, as those terms are defined by 17 U.S.C. § 101.

84. Midjourney's purpose in using EVOX's Copyrighted Images for development was to create concrete, digital images that closely approximated, and substantially incorporated, EVOX's protected imagery and creative aesthetic as part of the model development process. That, in turn, allowed Midjourney to build an AI Image Generation Product, which generates further concrete, digital images that closely approximate, and substantially incorporate, EVOX's protected imagery and creative aesthetic.

85. Specifically, the objective similarities between EVOX's Copyrighted Images and Midjourney's reproductions extend to both the individually protectable elements of EVOX's images as well as their particular combination, selection, and arrangement. And an ordinary reasonable observer comparing EVOX's Copyrighted Images to Midjourney's reproductions side by side would recognize that the reproduction appropriates the total concept and feel of an EVOX image, reproducing the expression that results from EVOX's unique combination of creative choices.

86. Midjourney willfully engaged in this infringing conduct in bad faith, disregarding, for example, (a) LAION's explicit warnings that its datasets were "not meant for any real-world

18

COMPLAINT

production or application" and should not be used "for creating ready-to-go industrial products" and (b) EVOX's website warnings against copying, reproducing, creating derivative works from, distributing, or commercially exploiting the company's copyrighted images.

87.     Midjourney's willfulness and bad faith are further illustrated by its practice of stripping EVOX's watermarks, on-image credit lines, metadata, and other CMI from EVOX's Copyrighted Images.

88.     Midjourney's willful, bad-faith copying of EVOX's Copyrighted Images was to serve its own commercial purposes, bolstering the company's hundreds of millions in subscription revenues. And while Midjourney rapidly grows its already-massive revenue base, it correspondingly causes severe and growing harm to the licensing market for EVOX's images.

89.     Midjourney's copying and use of EVOX's Copyrighted Images was not transformative. Indeed, the only "transformation" of the pirated copies that were used to train Midjourney's AI model was the removal of CMI. And the very purpose of Midjourney's downloading, copying, CMI-stripping, and forward- and reverse-diffusion training processes was to develop a commercial model that could faithfully reproduce images on command—albeit without CMI. The Midjourney AI Image Generation Product is a resounding success in that (unlawful) regard. Automotive images generated by the product can be used—and on information and belief are being used—for the exact same commercial purposes as EVOX's Copyrighted Images, including advertising for OEMs and dealers.

90.     The Midjourney AI Image Generation Product is flooding the market with images that are either functionally identical or highly similar to EVOX's Copyrighted Images, destroying the licensing market for EVOX's images.

91.     EVOX has been damaged by the willful infringement of the Copyrighted Images in a sum to be determined.

92.     On information and belief, the Midjourney will continue its infringing activities unless restrained and enjoined. EVOX's remedy at law is not by itself adequate to compensate it for the harm inflicted and threatened by the Midjourney's continued use of the Copyrighted Images.

19
COMPLAINT

**SECOND CAUSE OF ACTION**

**Contributory Copyright Infringement 17 U.S.C. § 501 *et seq.***

93.     EVOX repeats and realleges all prior allegations as if fully set forth herein.

94.     As explained above, Midjourney directly violated EVOX's exclusive rights protected by 17 U.S.C. § 106(1)–(3) and (5), including the exclusive right to reproduce its Copyrighted Images, prepare derivative works based upon those images, distribute copies of those images, and display those images.

95.     To the extent Midjourney contends that subscribers and users of the Midjourney AI Image Generation Product were the ones to directly infringe EVOX's copyrights in its Copyrighted Images, Midjourney is contributorily liable for that infringement.

96.     Midjourney has actual knowledge or should be aware that many of the subscribers and users of the Midjourney AI Image Generation Product routinely generate copies and derivative works of EVOX's Copyrighted Images.

97.     On information and belief, third-party users have in fact used the Midjourney AI Image Generator Product to reproduce, or to create works substantially similar to, or unauthorized derivative works of, EVOX's Copyrighted Images, constituting direct infringement. Midjourney's AI Image Generator Product is capable of, and was distributed for the purpose of, producing infringing reproductions and unauthorized derivative works of EVOX's Copyrighted Images because it was trained on the LAION-5B and DataComp datasets, and therefore downloaded, copied, and used at least 103,957 Copyrighted Images from the included links.

98.     That, in fact, is the reason Midjourney incorporated such a vast number of EVOX's Copyrighted Images into its model datasets: so that users of the Midjourney AI Image Generation Product could easily generate a virtually unlimited number of copies of, and derivative works based on, EVOX's Copyrighted Images. Midjourney therefore had constructive knowledge of its users' infringing activity and induced, caused, and substantially assisted that infringing conduct.

99.     Despite knowing that its model was trained on EVOX's images, and is capable of reproducing the protected expression of those images, Midjourney does nothing to discourage or

20

COMPLAINT

prevent its users from replicating copyrighted images. Instead, it specifically encourages its subscribers to use Midjourney for "exploring endless possibilities." And it provides a step-by-step guide to help users generate the images that they desire, including tips to help "match the look and feel of another image."[17]

100.   Midjourney has the right and ability to construct guardrails that would prevent users from following these instructions to generate infringing copies that substitute for EVOX's images, but refuses to do so. For example, Midjourney's terms of service reserve the right for Midjourney to "suspend or ban" subscribers' access to the AI Image Generation Product "at any time, and for any reason." The terms of service also allow Midjourney to investigate complaints or violations and to "take any action we deem appropriate," including reporting suspected unlawful activity to authorities and disclosing account and usage information. Midjourney can also block infringing outputs but refuses to do so. The company already, for example, blocks violence, nudity, and other content, yet refuses to implement protections that would prevent EVOX's Copyrighted Images from being displayed in the output.

101.   Midjourney, therefore, enables and induces its users to create a wide variety of images, including infringing ones. Although it prohibits some uses of its AI Image Generation product, it does not limit or prevent its use for the purposes of direct infringement of EVOX's Copyrighted Images.

102.   The Midjourney AI Image Generation Product, by design, functions as the site and facilities for users' and subscribers' direct infringement of EVOX's Copyrighted Images.

103.   Midjourney received, and continues to receive, a direct financial benefit from the infringement of users and subscribers of the Midjourney AI Image Generation Product. Specifically, Midjourney earned monthly and annual subscription fees from users who used the Midjourney AI Image Generation Product to generate copies of, and derivative works based on, EVOX's Copyrighted Images. EVOX is informed and believes that such users and subscribers include former customers and licensing partners of EVOX, who were attracted to, and now use, the

---

[17]   Midjourney, Getting Started Guide, https://docs.midjourney.com/hc/en-us/articles/33329261836941-Getting-Started-Guide.

COMPLAINT

Midjourney AI Image Generation Product because of its ability to generate high-quality automotive images that replicate EVOX's Copyrighted Images.

104.    Midjourney actively markets its AI Image Generation Product by reproducing and displaying infringing derivatives of EVOX's Copyrighted Images using its Explore page as a marketing tool to draw subscribers.

105.    Midjourney distributes the Midjourney AI Image Generation Product with the object of promoting its use for infringement, including of EVOX's Copyrighted Images. Indeed, Midjourney took the affirmative step of marketing the Midjourney AI Image Generation Product for its capabilities to generate high-quality images of cars and numerous other items, scenes, people, animals, and more, knowing that the images were based on unlicensed and unauthorized copies.

106.    On information and belief, the contributory infringement of the Copyrighted Photographs by Midjourney was willful.

107.    Midjourney was aware that it did not have authorization to use the Copyrighted Images in the LAION and DataComp datasets, and otherwise crawled, scraped, and downloaded from the internet, to train its AI Image Generation Product. And Midjourney was aware that it was not authorized to allow third party users of their AI Image Generator Product to reproduce, distribute, or craft derivative works based on the unauthorized copies of the Copyrighted Images.

108.    EVOX has been damaged by the contributory infringement of the copyrighted images in a sum to be determined.

109.    On information and belief, Defendant will continue its infringing activities unless restrained and enjoined. EVOX's remedy at law is not by itself adequate to compensate it for the harm inflicted and threatened by the continued use of the copyrighted images.

### THIRD CAUSE OF ACTION

**Removal of Copyright Management Information ("CMI") in Violation of the**

**Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.***

110.    EVOX repeats and realleges all prior allegations as if fully set forth herein.

111.    EVOX's copyrighted images—which Midjourney unlawfully downloaded, copied and used, as explained above—featured CMI, including visual watermarks ("© Evox Images") and on-image credit lines.

112.    Midjourney removed that CMI as part of its pre-processing of EVOX's images, before starting the forward-diffusion and reverse-diffusion development processes. Midjourney performed such pre-processing removal on intact copies of EVOX's copyrighted images.

113.    To the extent CMI was not completely removed as part of pre-processing, Midjourney then intentionally altered and removed that CMI as part of the forward-diffusion training process by incrementally adding "noise" to EVOX's images. Midjourney then further intentionally altered such CMI as part of the reverse-diffusion process. When the Midjourney AI Image Generation Product copied and substantially incorporated protected expression from EVOX's images, it either entirely omitted EVOX's corresponding CMI or altered that CMI to the point of being distorted or completely unrecognizable.

114.    Such removal and alteration of EVOX's CMI was intentional, as Midjourney understood that watermarked images pose a big problem when developing generative models, for the reasons described above.

115.    By removing and altering EVOX's CMI, Midjourney further induced, enabled, facilitated, and concealed copyright infringement. The removal of CMI allowed Midjourney to conceal the copyrighted nature of the images when making copies in its iterative training process. It also empowered users of the Midjourney AI Image Generation Product to further copy and substantially incorporate protected expression from EVOX's copyrighted images, including the distinctive aesthetic of the individual EVOX images. Midjourney's removal and alteration of EVOX's CMI also helped Midjourney to conceal its copyright infringement after the fact. Such infringement otherwise would be obvious if the Midjourney AI Image Generation Product routinely output EVOX's watermarks, on-image credit lines, metadata, and other CMI. Such removal and alteration also made it difficult or impossible for third party users of Midjourney to know that

COMPLAINT

reproduction, display, and distribution of the copyrighted images, or unauthorized derivative works, violated EVOX's copyrights.

## **PRAYER FOR RELIEF**

116.    WHEREFORE, EVOX prays for relief as follows:

a.    Injunctive relief to prevent and restrain Midjourney's infringement of EVOX's copyrights;

b.    Impoundment, destruction, and reasonable disposition of Midjourney's infringing copies of EVOX's Copyrighted Images;

c.    EVOX's actual damages stemming from Midjourney's copyright infringement;

d.    Disgorgement of Midjourney's profits that are attributable to its infringement of EVOX's Copyrighted Images;

e.    Statutory damages per work infringed, up to $150,000 per work for Midjourney's willful infringement of EVOX's Copyrighted Images;

f.    Costs and a reasonable attorney's fee;

g.    Injunctive relief to prevent or restrain violations of 17 U.S.C. § 1202(b);

h.    Impoundment of Midjourney's devices, products, components, technology, services, and parts involved in its violations of 17 U.S.C. § 1202(b);

i.    EVOX's actual damages stemming from Midjourney's violations of 17 U.S.C. § 1202(b);

j.    Disgorgement of Midjourney's profits that are attributable to its violations of 17 U.S.C. § 1202(b);

k.    Statutory damages of up to $25,000 for each of Midjourney's violations of 17 U.S.C. § 1202(b);

l.    Equitable relief, including orders to (a) modify or destroy Midjourney's devices involved in the violation and (b) provide remedial notice;

m.    Prejudgment interest; and

COMPLAINT

n.   Other relief as the Court deems equitable, just, and appropriate.

**DEMAND FOR JURY TRIAL**

117.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, EVOX demands a jury trial.

Dated: July 30, 2026

By:   */s/ Michael Adamson*
Rohit Nath (SBN# 316062)
Michael Adamson (SBN# 321754)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: rnath@susmangodfrey.com
madamson@susmangodfrey.com

Justin A. Nelson (*to seek pro hac vice*)
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: jnelson@susmangodfrey.com

Nancy E. Wolff (SBN# 133334)
**Cowan, DeBaets, Abrahams & Sheppard, LLP**
60 Broad Street, 30th Floor
New York, NY 10004
Telephone: (212) 974-7474
Email: nwolff@cdas.com

COMPLAINT